IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSHUA HARE

     v.                          :   Civil Action No. DKC 11-1439

OPRYLAND HOSPITALITY, LLC

**MEMORANDUM OPINION**

Presently pending and ready for review in this personal injury case are two motions:  the motion to dismiss filed by Defendants Opryland Hospitality, LLC and Anthony Rakis (ECF No. 9), and the motion to consolidate filed by Plaintiff Joshua Hare (ECF No. 10).  The issues have been fully briefed, and the court now rules, no hearing deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted, and the motion to consolidate will be denied as moot.

**I.   Background**

**A.   Factual Background**

Plaintiff Joshua Hare alleges the following facts.  On the evening of June 28, 2008, Hare attended a party with some friends at the Pose Ultra Lounge, which is located at the Gaylord National Resort and Convention Center ("the Gaylord") in National Harbor, Maryland.  Defendant Opryland Hospitality, LLC ("Opryland") operates the Gaylord.

In the early morning of June 29, 2008, as Hare's group was preparing to leave the party, an Opryland bouncer named Karl Hedgeman "assaulted" one of Hare's friends.  (ECF No. 1 ¶ 4). Hare "tried to shield his friend from further assault," when Hedgeman "punched . . . Hare several times and knocked him to the floor."  (*Id.* ¶ 5).  Hedgeman then "smashed . . . Hare in the head with a liquor bottle," causing a "significant wound" to Hare's left cheek.  (*Id.* ¶ 6).

Defendant Anthony Rakis was working as the manager of the Pose Ultra Lounge on the night of June 28, 2008.  Rakis "observed . . . Hedgeman's assault first on . . . Hare's friend and then on . . . Hare from several feet away."  (*Id.* ¶¶ 9-10). Rakis did not intervene to stop Hedgeman's actions.  After the incident, Rakis ordered Hedgeman to go to Rakis's office.  Hare went to a local hospital for emergency treatment and follow-up care.  As a result of the events of that night, he has a "significant disfiguring scar on his face which is permanent." (*Id.* ¶ 14).

B.   **Procedural Background**

The procedural history of this case is somewhat complicated.  Before the instant case was filed, Hare first brought suit on November 28, 2008, against Gaylord Entertainment Co. and Gaylord National, LLC in the Circuit Court for Prince

George's County, Maryland ("*Hare I*").[1]  That case was removed to this court.  Hare then filed a first amended complaint naming Opryland as the sole defendant and asserting that (1) Opryland was liable for Hare's injuries inflicted by Hedgeman under the theory of *respondeat superior* and (2) Opryland was liable for negligent hiring, retention, and training of Hedgeman. Discovery proceeded throughout most of the following year, closing on October 30, 2009.

On January 25, 2010, Hare filed a motion for leave to file a second amended complaint that added a request for punitive damages as well as claims that Opryland's employees mishandled the closing procedures, that Opryland's manager negligently supervised its employees, and that Opryland negligently trained staff other than Hedgeman.  In a September 17, 2010, memorandum opinion and order, this court granted in part and denied in part Hare's motion.  Hare was barred from seeking punitive damages and adding new claims related to Opryland's supervision and training of employees other than Hedgeman, but he was permitted to add certain allegations pertaining to Opryland's hiring, training, and retention of Hedgeman.  After the issuance of the opinion, Hare did not move for reconsideration within the time

---

[1] *Hare v. Opryland Hospitality, LLC*, No. DKC 09-0599 (D.Md. filed Mar. 10, 2009).

permitted under the Local Rules, nor did he file a complaint with the permitted amendments.

As Hare explained at a pretrial conference on December 13, 2010, he understood the September 17th opinion as barring only those claims related to the employees other than Hedgeman, but that a claim of negligent supervision of Hedgeman himself was permitted — and was to be presented at trial. Following the pretrial conference, on December 15, 2010, Hare filed a motion for reconsideration or voluntary dismissal. Hare sought dismissal so that he could refile his case to include a negligent supervision claim or, in the alternative, reconsideration of the September 17th opinion for the same purpose. On September 15, 2011, this court issued a memorandum opinion and order granting in part and denying in part the motion, thereby permitting Hare to add a claim of negligent supervision of Hedgeman. Trial was set for May 2012.

On May 26, 2011, after Hare moved for reconsideration or voluntary dismissal but before this court ruled, Hare filed the complaint in the instant case against Opryland and Rakis in this court ("*Hare II*"). This complaint contains four counts arising from the same nucleus of facts of the still-pending *Hare I* case: (1) battery; (2) negligence; (3) negligent supervision; and (4) negligent training. All counts are asserted against Opryland, while only Count Two is asserted against Rakis. In addition,

4

this complaint seeks punitive damages. This case was temporarily stayed pending the resolution of Hare's motion for reconsideration or voluntary dismissal in *Hare I*. That motion now having been decided, Defendants moved to dismiss the *Hare II* complaint on October 6, 2011. (ECF No. 9). On October 21, 2011, Hare opposed (ECF No. 12), and on November 7, 2011, Defendants replied to Hare's opposition (ECF No. 16). Separately, on October 21, 2011, Hare voluntarily dismissed Rakis from the case. (ECF No. 11). That same day, Hare filed a motion to consolidate *Hare I* and *Hare II*. (ECF No. 10). Opryland filed an opposition on November 7, 2011. (ECF No. 15). On November 23, 2011, Hare replied. (ECF No. 17).

## II. Analysis

Defendants first argue that the complaint should be dismissed because this case is duplicative of the *Hare I* litigation. Hare does not address this argument, explaining only that he filed the complaint "to preserve [his] claim within the statute of limitations period." (ECF No. 12, at 1). Because this issue is dispositive, Defendants' remaining arguments need not be addressed.

It is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the

general principle is to avoid duplicative litigation."). This rule against duplicative litigation, also referred to as "claim splitting," is the "'other action pending' facet of the res judicata doctrine.'" *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998).[2] "Like res judicata, claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action.'" *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F.Supp.2d 621, 626 (D.Md. 2006) (quoting *Myers v. Colgate-Palmolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan. 2000)). Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action "on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2[d] Cir. 2000).

In a claim splitting case, as with the traditional *res judicata* analysis, the second suit will be barred if the claim

---

[2] The rule against claim splitting is based on the same principles as *res judicata*. *Res judicata* applies, however, when a second suit is filed after a final adjudication of a first suit, and claim splitting applies when, like here, two suits are pending at the same time. Regardless of the differences in form, both doctrines intend to "foster[] judicial economy and protect[] the parties from vexatious and expensive litigation." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2[d] Cir. 2000). To meet these objectives, courts faced with duplicative suits may stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions. *See id.* at 139 (citing cases in which courts took various actions).

involves the same parties or their privies and "arises out of the same transaction or series of transactions" as the first claim. *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002). The court must "assess whether the second suit raises issues that should have been brought in the first." *Curtis*, 226 F.3d at 140. This court previously held that:

> Very often, the doctrine of claim splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims. *See N. Assurance Co. v. Square D Co.*, 201 F.3d 84, 87-88 (2[d] Cir. 2000) (collecting cases dismissing claim in second suit that was duplicative of claim sought to be amended in first suit); *In re Kevco, Inc.*, 309 B.R. 458, 465-66 (Bkrtcy.N.D.Tex. 2004) (same). The preclusion of a claim not only prohibits a plaintiff from filing duplicative suits and from circumventing an earlier ruling of the court, it is in keeping with "the rule that a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time." *Curtis*, 226 F.3d at 139.

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F.Supp.2d 574, 579 (D.Md. 2004).

Here, it is undisputed that the parties, the forum, and the underlying conduct giving rise to the claims in *Hare I* and *Hare II* are not just similar, but are identical. Hare readily concedes as much in the *Hare II* complaint:

> *Plaintiff has a case pending before this Court (Civil Case No. 8:09-cv-00599) that is based on the same underlying facts set forth in this Complaint.* In that case, Plaintiff is awaiting a ruling from the Court on his Motion for Voluntary Dismissal or to Reconsider, filed on December 15, 2010. Due to the approaching Statute of Limitations date, Plaintiff files this Complaint.

(ECF No. 1, at 1 n.1) (emphasis added). Substantively, the *Hare II* complaint differs from the operative *Hare I* complaint in three main respects. First, it includes a new claim for negligence; second, it includes an explicit claim for negligent supervision; and third, it includes a request for punitive damages. Under the doctrine of claim splitting, none of these issues may proceed.

To begin, Hare does not explain — nor could he — why he failed to include a negligence claim in *Hare I*. Because the negligence claim is founded upon the same set of allegations that is presented in *Hare I*, a negligence claim could have been asserted in that case at the earliest stages of the pleadings. Hare may not use this parallel proceeding to effect an end-run around the deadline for amending the complaint in *Hare I*, which was April 27, 2009. Hare filed the complaint in this case on May 26, 2011 — over two years after that deadline.

Similarly, this proceeding is an inappropriate mechanism for asserting a negligent supervision claim in *Hare I*. In *Hare I*, Hare moved for reconsideration with respect to the court's

September 17, 2010, order, in which Hare's motion for leave to file a second amended complaint was denied. By granting in part the motion for reconsideration, the court essentially granted Hare leave to file a second amended complaint to include a negligent supervision claim. If Hare still intends to pursue a negligent supervision claim, his avenue to do so lies in *Hare I*, not here.

Finally, this court expressly considered and rejected Hare's request for punitive damages when it initially denied Hare's motion for leave to file a second amended complaint in *Hare I*. The court found a lack of diligence on Hare's part in seeking punitive damages such that good cause for altering the scheduling order to allow amendments to the first amended complaint was not shown. When Hare sought reconsideration of the court's September 17th order, he sought reconsideration with respect to only the negligent supervision claim. Nowhere in his motion, nor in the two supplements to the motion that he subsequently filed, did Hare even mention punitive damages. Indeed, the court did not address this issue in its September 15, 2011, memorandum opinion and order. Here, Hare asserts that "his claim for punitive damages belongs in this case, where Opryland's employee Mr. Hedgeman acted with the intent to injure and with evil motive when he intentionally struck Mr. Hare in the head with a bottle." (ECF No. 10, at 4). As with the other

"new" issues identified in *Hare II*, however, Hare still fails to explain why his request for punitive damages could not have been timely brought in *Hare I*.   Accordingly, the complaint in this case shall be dismissed.

Because the complaint here will be dismissed, Hare's motion to consolidate will be denied as moot.   *E.g.*, *Int'l Org. of Masters, Mates, & Pilots v. Prevas*, 20 F.Supp.2d 895, 898 (D.Md. 1998); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 946 F.Supp. 420, 422 (M.D.N.C. 1996).

## III. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants Opryland Hospitality, LLC and Anthony Rakis will be granted.   The motion to consolidate filed by Plaintiff Joshua Hare will be denied as moot.   A separate order will follow.


                                                                   /s/
                                               DEBORAH K. CHASANOW
                                               United States District Judge